UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT


No. 93-1965
TRESCA BROTHERS SAND AND GRAVEL, INC.,

Plaintiff, Appellant,

v.

TRUCK DRIVERS UNION, LOCAL 170,

Defendant, Appellee.



APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Joseph L. Tauro, U.S. District Judge]



Before

Cyr, Circuit Judge,

Aldrich, Senior Circuit Judge,

and Stahl, Circuit Judge.



Robert P. Corcoran, with whom Gleeson & Corcoran was on brief for
appellant.
Raymond J. Reed, with whom Reed & Reed was on brief for appellee.



March 25, 1994
 

CYR, Circuit Judge. Tresca Brothers Sand & Gravel, CYR, Circuit Judge. 

Inc. (Tresca) brought suit under section 303(b) of the National

Labor Relations Act (NLRA), 29 U.S.C. 187(b), charging defen-

dant-appellee Truck Drivers Union, Local 170 (Local 170 or the

Union) with unfair labor practices during contract negotiations.

Following a two-day bench trial, the district court concluded

that a subcontracting proposal advanced by the Union during a

strike had indeed violated both NLRA sections 8(b)(4) and 8(e),

29 U.S.C. 158(b)(4), (e), which prohibit, respectively, compul-

sion against an employer to require any self-employed person to

join a labor organization, and to require an employer to cease

doing business with any party. The district court nevertheless

found that Tresca had not established a sufficient causal link

between the unlawful Union conduct and the injury Tresca alleged-

ly sustained as a result of the strike.

In March 1991, Tresca, in coalition with four other

ready-mix concrete companies (collectively "the Companies"),

began contract renewal negotiations with Local 170.1 By all

accounts, negotiations were contentious from the outset. The

Companies sought significant work-rule modifications (e.g., a

reduction from eight to four guaranteed hours' pay for each day a

driver is called to work) and benefit eligibility restrictions,

which the Union considered unacceptable. The Union proposed


1We outline only the background necessary to an understand-
ing of the narrow issue presented on appeal.

2

forty-two separate modifications to the existing contract,

including the elimination of the arbitration clause and the

addition of a subcontracting clause, both deemed unacceptable by

the Companies. After five acrimonious bargaining sessions, the

parties remained at loggerheads. On May 4, 1991, the membership

of Local 170 rejected the latest contract proposal by the Compa-

nies and voted to go out on strike. Although additional bargain-

ing sessions were convened during the strike, the stalemate

continued.

The focal point of this appeal is the subcontracting

proposal made by the Union at the May 9 bargaining session,

whereby the Companies would be required to sever their business

relationships with all non-union owner-operators hauling sand and

gravel for the Companies. The parties agree that the Union's May

9 proposal was unlawful.

At a June 13 bargaining session, after the Companies

had filed a complaint with the National Labor Relations Board

(NLRB), the Union formally withdrew the unlawful May 9 subcon-

tracting proposal.2 The Companies' most recent "final" contract

proposal, containing demands for significant work-rule changes,

was rejected by the membership of Local 170 the very next day, on

June 14. In short order, the employers' coalition dissolved and

individual companies began separate contract negotiations with


2The NLRB declined to issue a complaint. Teamsters Local
170, N.L.R.B. Nos. 1-CC-2363 (1-2) (Aug. 15, 1991).

3

the Union. Tresca and the Union were never able to resolve their

differences. Replacement workers were hired and the strike

continues to this day.

The central dispute at trial concerned the importance

attached by the Union leadership and membership to the Union's

unlawful subcontracting proposal and its significance in the

decision to strike. The Union contended that economic issues and

the work-rule concessions sought by the Companies were always at

the heart of the dispute. Tresca insisted that the illegal

subcontracting proposal was presented as an ultimatum by the

Union's negotiators and dominated the contract negotiations.

DISCUSSION DISCUSSION

Both parties endorse the applicable legal standard as

explained by the district court:

In order to make a legal claim under Section
303(b) of the NLRA, a party must prove that
it was injured "by reason of" an unfair labor
practice. [This phrase] has been interpreted
to mean there must be some causal nexus be-
tween the unfair labor practice and the inju-
ry allegedly suffered. Mead v. Retail Clerks
Int'l Ass'n, 523 F.2d 1371, 1378-79 n.9 (9th
Cir. 1975) (no liability if an illegal moti-
vation is merely "an object" of a strike),
cited with approval, John B. Cruz Constr. Co.
v. [United] Bhd. of Carpenters and Joiners,
907 F.2d 1228, 1232 (1st Cir. 1990); see
Feather v. United Mine Workers, 903 F.2d 961,
965-66 (3rd Cir. 1990). Under what has be-
come known as the Mead test, injury occurs
"by reason of" particular unlawful conduct
only if that conduct "materially contributes"

4

to the injury or is a "substantial factor" in
bringing it about. Mead, 523 F.2d at 1376.

Tresca Brothers Sand & Gravel v. Truck Drivers Union, Local 170,

CA No. 91-11590-T, slip op. at 3 (D. Mass. July 29, 1993).

Although Tresca attempts on appeal to couch its contention as a

challenge to the district court's application of the Mead

multiple-motivation test,3 its assignments of error all presume

"clear error" in the district court's central finding of fact

that "[a]t no time were the Union's subcontracting proposals ever

a motivation for the strike." Id. at 8 (emphasis added).

Obviously, unless the unlawful subcontracting proposal was a

motivation, it could not have been a "substantial factor" in

bringing about the strike; and Tresca cannot prevail on its Mead-

test contention however characterized.

We review the district court's findings of fact for

clear error. John B. Cruz Constr. Co. v. United Bhd. of

Carpenters and Joiners, 907 F.2d 1228, 1230 (1st Cir. 1990).

Thus, the central finding in this case "will be given effect

unless, after reading the record with care and making due

allowance for the trier's superior ability to gauge credibility,



3Tresca argues that the district court failed to appreciate
that a strike may be motivated by more than one "substantial
factor," Frito-Lay, Inc. v. International Bhd. of Teamsters,
Local 137, 623 F.2d 1354, 1363 (9th Cir.), cert. denied, 449 U.S.
1013 (1980), and that unlawful conduct may be a substantial
motivating factor even though other factors standing alone would
have been sufficient to prompt a strike, see Feather v. United
Mine Workers, 903 F.2d 961, 966 n.11 (3d Cir. 1990). 

5

[we form] 'a strong, unyielding belief that a mistake has been

made.'" Dedham Water Co. v. Cumberland Farms Dairy, Inc., 972

F.2d 453, 457 (1st Cir. 1992) (quoting Cumpiano v. Banco

Santander Puerto Rico, 902 F.2d 148, 152 (1st Cir. 1990)); see

Anderson v. Bessemer City, 470 U.S. 564, 573 (1985) ("If the

district court's account of the evidence is plausible in light of

the record viewed in its entirety, the court of appeals may not

reverse it even though convinced that had it been sitting as the

trier of fact, it would have weighed the evidence differently.").

A careful review of the entire record discloses no clear error in

the finding that the unlawful subcontracting proposal was not a

motivation for the strike.

First, the unlawful subcontracting proposal was not

made until after Local 170 voted to strike Tresca on May 4.

Second, Tresca concedes that the Union membership was never

motivated by the subcontracting proposal. Third, the Union

membership rejected another contract proposal by the Companies

immediately after the Union's unlawful subcontracting proposal

was withdrawn on June 13. Thus, there is no dispute that before,

during, and after the time the unlawful subcontracting proposal

was on the bargaining table, the Union membership was motivated

by other concerns unrelated to the subcontracting proposal

for which the membership was ready to strike. This

circumstantial evidence alone provided plausible support for the

district court finding.

6

There remains only the question of the motivations of

Union negotiators.4 Tresca insists that there is uncontroverted

evidence that the Union negotiators presented the unlawful

subcontracting proposal as an ultimatum. The record simply does

not bear this out. The witnesses presented by the parties at

trial gave diametrically opposed accounts as to when the

subcontracting proposal was presented and whether subcontracting

was the key issue, as Tresca maintains, or simply a bargaining

chip, as the Union claims. The only objective non-testimonial

evidence presented by Tresca indicates that the subcontracting

proposal first surfaced at the May 9 bargaining session. But the

timing of the subcontracting proposal, while relevant, does not

determine the outcome of the motivation test required under Mead.

Rather, in the present context, the question whether the strike,

or its prolongment, was motivated by the subcontracting proposal

turns on the actions and intent of the Union representatives

responsible for the decision to inject it as an element in the

collective bargaining.

The chief negotiator for the Union specifically denied

that the May 9 subcontracting proposal was ever presented as an


4The record does not support Tresca's unnatural reading that
the district court's findings on motivation for the strike, see
supra at p.4, addressed only the motivations of the striking
employees and not those of the Union negotiators. The district
court finding itself contains no such qualification, nor is there
any evidence that the strike motivations harbored by the
membership differed substantially from those of the Union
negotiators.

7

ultimatum, and expressly denied that it was ever a motivation for

the strike. The district court clearly credited the testimony of

Local 170's chief negotiator.5

"[W]hen factual findings are based on determinations

regarding the credibility of witnesses, Rule 52 demands that the

appeals court accord even greater deference to the trial court's

findings." Rodriguez-Morales v. Veterans Admin., 931 F.2d 980,

982 (1st Cir. 1991) (citing cases); see also Anderson, 470 U.S.

at 573. Based on its credibility determination relating to the

Union's motivation, and the undisputed fact that the

subcontracting proposal was not a strike motivation for the Union

membership, there was no clear error in the district court

finding that the May 9 subcontracting proposal was not a

motivation behind the strike. Accordingly, we affirm its ruling

that Union liability under NLRA 303(b) was foreclosed.

Affirmed. Affirmed.


5Near the end of the trial, the district court outlined for
counsel the credibility problem confronting Tresca:

You have had a witness on the stand here who said that
[the Union's negotiator] says "I am going to get this
[subcontracting] proposal . . . I have been wanting to
do it a hundred years and this is life or death.
Without this, nothing."
. . . I presume that somebody is going to
corroborate it. These are the people that were there.
Are they going to corroborate it or aren't they? There
is no subtlety here. Either it happened or it didn't.
If it happened, you've got a slam dunk. If it
didn't, you have a problem.

Trial Tr. at 42-43, July 22, 1993.

8